ALEXANDRIA, ARCADIA AND FORT SMITH RAILROAD COMPANY v. G. H. T. JOHNSON *et al.*

**No. 11,383.**   (59 Pac. 1063.)

1. CONTRACT— *To be Performed in Another State—Laws Applicable.* An agreement made by citizens of this state, to indemnify a citizen of another state for advances of money made by him to another citizen of that state for the purpose of prosecuting certain work in that state, is a contract of that state—that is, a contract to be performed in that state—and, therefore, as to its interpretation and effect, it is governed by the laws of that state.

2. EVIDENCE— *Statutes and Decisions of Another State.* The statutes and decisions of a sister state are unknown to our courts in cases in which they may be drawn in question, and they must be proved as facts; and unless a statute or decision of another state has been introduced in evidence to the court below, this court will not notice it upon a review of the case.

Error from Atchison district court; R. M. EMERY, judge *pro tem.* Opinion filed February 10, 1900. Affirmed.

*B. F. Hudson,* for plaintiff in error.

*Jackson & Jackson,* and *Thos. J. White,* for defendants in error.

The opinion of the court was delivered by

DOSTER, C. J. : This case was once before in this court. (*Railroad Co. v. Johnson,* 58 Kan. 175, 48 Pac. 847.) Upon the hearing then had it was reversed, with directions for a new trial. Upon that trial a verdict and judgment were rendered in favor of the plaintiff in error, but not in the form satisfactory to it, and it has again prosecuted error to this court.

The material facts are that on the 7th day of October, 1889, two railroad companies, one called the Alexandria, Arcadia and Fort Smith Railroad Com-

27—61 KAN.

pany, the other the Kansas City, Louisiana and Gulf Railroad Company, entered into an agreement with each other relative to the construction of a line of railroad in the state of Louisiana.    For shortness of designation these two companies will be hereafter called the "Arcadia" company and the "Kansas City" company.    In the contract referred to, the Arcadia company was termed the "corporation of the first part," and the Kansas City company the "corporation of the second part."    The only portion of the contract with which we have any concern is as follows :

" The corporation of the first part further agrees that when the corporation of the second part shall put their engineers to work on the actual location of said road, that it will turn over to the corporation of the second part all of its engineers' outfit, and pay from time to time as may be necessary the actual cost of an actual survey from the town of Arcadia, to such point on the Red river as the corporation of the second part may designate as the crossing point of said river, and on the completion of said road to the crossing point on said river, the corporation of the first part will pay to the corporation of the second part the sum of $2655.75 less the expense of said actual survey and transfer to the party of the second part the subsidy voted to the corporation of the first part by the town of Arcadia, being a five-mills' tax on said town for a term of ten years ; but it is agreed that before the corporation of the first part shall advance any part of the price of said actual survey the individual members of the corporation of second part living in the state of Kansas shall execute and deliver to the corporation of the first part their obligation to the effect that they will reimburse said corporation of the first part for all moneys it shall expend in case said corporation of the second part fails to construct said road as hereinbefore provided."

In pursuance of the above agreement made by the

Kansas City company to procure for the benefit of the Arcadia company the obligation of the individual members of the said Kansas City company to reimburse the Arcadia company for the moneys expended by it for the Kansas City company, the several members of the last-named company, on the 9th day of November, 1889, executed the following agreement:

"This agreement, made this 9th day of November, A. D. 1889, between the undersigned members of the Kansas City, Louisiana and Gulf· Railroad Company, of the first part, and the Alexandria, Arcadia and Fort Smith Railroad Company, of the second part, witnesseth:

"That whereas the said party of the second part, in pursuance of its contract with the first-named company, dated the 7th day of October, 1889, is furnishing the means to make an actual and permanent survey of the proposed line of railroad of the first-named company, from the town of Arcadia, in Bienville parish, Louisiana, to the Red river in said state, and to the point of bridging said river;

"Now, therefore, we agree that, in case said company of the second part shall so furnish said money to make said survey, and the company first named herein shall fail to build said railroad, as per said contract of the 7th day of October, 1889, then we, said undersigned members, are to refund to said Alexandria, Arcadia and Fort Smith Railroad Company the money so advanced by it in making said survey; otherwise this contract shall be void." ·

Under the contract between the two companies the Arcadia company advanced to the Kansas City company the sum of $2655.75, but the latter failed to construct the railroad in accordance with the terms of its agreement, or to reimburse the former for the money it had advanced. Suit was thereupon brought to recover on the contract of indemnity just quoted. Upon the trial, judgment was rendered for the plaintiff

against all the defendants, not, however, *in solido*, or for the full amount against each of them, but against each of them separately for the sum of $300 as a portion of the whole amount. The reason for the rendition of this kind of judgment was that in the view of the court below the contract sued on was a Louisiana contract, governed as to the liability of the obligees by the laws of that state, and that by such laws judgment could only be rendered in aliquot parts against the obligees, and not *in solido*, or for the full amount against each of them. The soundness of these conclusions of the court is now for consideration by us.

The record shows that both the Arcadia company and the Kansas City company were corporations organized and existing under the laws of Louisiana, and it will be observed that the road which the one company had undertaken to construct and for the survey of which the other company had agreed to make advances was in the same state. The record also shows that the obligors signing the contract of November 9, 1889, were residents of the state of Kansas ; and it further shows that they signed and mailed it in this state, addressed to the Arcadia company in Louisiana. The first question arising upon this state of facts is whether the instrument signed by them is a Kansas or a Louisiana contract. We think it is a Louisiana contract — that is, a contract which the law regards as having been made in that state. Reduced to exact terms, it is an engagement made by citizens of Kansas with a citizen of Louisiana to indemnify the latter against lost by reason of his advancement of money to another citizen of Louisiana for the performance of work by him in the latter state. Within the principle of the most carefully considered decisions, this makes the contract, as regards its interpretation and effect,

a Louisiana contract — that is, a contract to be per-
formed in that state — and therefore, in respect to the
liability of the parties signing it, subject to the laws
of that state.   In effect, a citizen of Kansas said to a
citizen of Louisiana : "If you, in your state, will ad-
vance money to a certain other citizen of your state,
to enable him to prosecute certain work in your state,
I will repay you in the event the one to whom the
advances are made does not do so." In such case the
law implies that the contract of indemnity will be ful-
filled in the state where the delinquency indemnified
against was to occur and did occur.   In *Milliken v.
Pratt*, 125 Mass. 374, it was held : "A contract of
guaranty, signed in this commonwealth and sent by
mail to another state, and assented to and acted on
there for the price of goods sold there, is made in that
state." In the opinion it was remarked :

"If the contract is completed in another state, it
makes no difference in principle whether the citizen of
this state goes in person, or sends an agent, or writes
a letter, across the boundary line between the two
states.   As was said by Lord Lyndhurst, 'If I, resid-
ing in England, send down my agent to Scotland, and
he makes contracts for me there, it is the same as if I
myself went there and made them.' *Pattison v. Mills*,
1 Dow & Cl. 342–363.   So if a person residing in
this state signs and transmits, either by a messenger
or through the post-office, to a person in another state,
a written contract, which requires no special forms or
solemnities in its execution, and no signature of the
the person to whom it is addressed, and is assented to
and acted on by him there, the contract is made there,
just as if the writer personally took the executed con-
tract into the other state, or wrote and signed it there."

In *Boyle v. Zacharie*, 6 Pet. 635, 8 L. Ed. 527, the
facts of that case and the law applicable thereto were
summarized in the succeeding case of *Pritchard v. Nor-*

*ton*, 106 U. S. 140, 1 Sup. Ct. 115, 27 L. Ed. 109, as follows :

" Zacharie & Turner were resident merchants at New Orleans, and Boyle at Baltimore. The latter sent his ship to New Orleans, consigned to Zacharie & Turner, where she arrived, and, having landed her cargo, the latter procured a freight for her to Liverpool. When she was ready to sail she was attached by process of law at the suit of certain creditors of Boyle, and Zacharie & Turner procured her release by becoming security for Boyle on the attachment. Upon information of the facts, Boyle promised to indemnify them for any loss they might sustain on that account. Judgment was rendered against them on the attachment bond, which they were compelled to pay, and to recover the amount so paid they brought suit in the circuit court for Maryland against Boyle upon his promise of indemnity. A judgment was rendered by confession in that cause, and a bill in equity was subsequently filed to enjoin further proceedings on it, in the course of which various questions arose, among them, whether the promise of indemnity was a Maryland or a Louisiana contract. Mr. Justice Story, delivering the opinion of the court, said : ' Such a contract would be understood by all parties to be a contract made in the place where the advance was to be made, and the payment, unless otherwise stipulated, would also be understood to be made there ; that the contract would clearly refer for its execution to Louisiana.' "

The case of *Pritchard v. Norton*, from which the above quotation is taken, is to the same effect. The facts of that case and the resulting law were stated as follows :

" A. and B. executed and delivered to C., in New York, a bond of indemnity, conditioned to hold harmless and fully indemnify him against all loss or damage arising from his liability on an appeal bond, which he had signed in Louisiana as surety on behalf of a certain railroad company, defendant in a judg-

Railroad Co. v. Johnson.

ment rendered against it in the courts of the latter
state, and which, being affirmed, he was compelled to
pay.  By the law of New York, any written instru-
ment, although under seal, was subject to impeach-
ment for want of consideration ; and a preexisting
liability, entered into without request, which was the
sole consideration of that bond of indemnity, was in-
sufficient.  It was otherwise in Louisiana.  A suit on
the bond was brought in Louisiana.  *Held*, 1, That
the question of the validity of the bond, as dependent
upon the sufficiency of its consideration, is not a mat-
ter of procedure and remedy, to be governed by the
*lex fori*, but belongs to the substance of the contract,
and must be determined by the law of the seat of the
obligation.  2. In every forum a contract is gov-
erned by the law with a view to which it is made,
because, by the consent of the parties, that law be-
comes a part of their agreement ; and it is, therefore,
to be presumed, in the absence of any express declara-
tion or controlling circumstance to the contrary, that
the parties had in contemplation a law according to
which their contract would be upheld, rather than
one by which it would be defeated.  3. The obliga-
tion of the bond of indemnity was either to place
funds in the hands of the obligee, wherewith to. dis-
charge his liability when it became fixed by judg-
ment, or to refund to him his necessary advances in
discharging it, in the place where his liability was
legally solvable ; and as this obligation could only be
fulfilled in Louisiana, it must be governed by the laws
of that state as the *lex loci solutionis*.''

Counsel for plaintiff in error likens the case under
consideration to the making of a proposition of con-
tract by one party and its acceptance by mail by the
one to whom made.  In such case, as he contends, the
engagement is complete upon the- deposit in the post-
office of a letter of acceptance addressed to the pro-
ponent.  There is, however, no similitude between
such kind of case and the one with which we have to
deal.  The Arcadia company did not propose any-

thing to the indemnitors signing the bond. The proposition it made was to the Kansas City company. The proposition was that the latter company should procure certain of its members to sign a contract of indemnity. The proposition to the members of the Kansas City company was made by that company as a corporate entity, not by the Arcadia company. Had the members of the Kansas City company refused to sign the contract, their refusal would have been the rejection of an offer made by their own company, but, accepting it as they did, their acceptance was the assent to the offer of their own company, and not the offer of the Arcadia company.

The contract of indemnity having in legal effect been made in Louisiana, and therefore governable by the laws of that state, the remaining question is, What are the laws of Louisiana applicable to it? The general rule is that the laws of a foreign country or of a sister state are unknown to the courts in which they may be drawn in question, but, if required to be known, must be proved as facts in the case, except that in some instances, in the lack of proof of what they are, they may be presumed to be the same as the laws of the forum where drawn in question. (13 A. & E. Encycl. of L., 2d ed., title, "Foreign Laws"; 9 Encyc. Pl. & Pr., title, "Foreign Laws.") Such also is the statute of this state. (Civil Code, § 370; Gen. Stat. 1897, ch. 97, §§ 17, 18; Gen. Stat. 1899, § 4633.)

Upon the trial in the court below, the defendants, the defendants in error here, introduced in evidence various provisions of the Louisiana statutes, the substance of which was that a contract in writing for the payment of money was presumed to be what in that state is termed a "joint obligation," and that in case of such obligations "judgment must be rendered

against each defendant separately for his proportion of the debt and damages." By others of these statutory provisions certain contracts for the payment of money might be what is termed in that state obligations *"in solido"*—that is, obligations on the part of each of the obligors for the payment of the entire debt and not a proportionate part of it; but the statute as to such cases expressly declares: "An obligation *in solido* is not presumed. It must be expressly stipulated." However, a further provision of this statute is as follows: "This rule ceases to prevail only in cases where an obligation *in solido* takes place of right by virtue of some provision of the law." No provisions of law declaring or indicating the cases of the cessation of the last-quoted statutory rule were introduced in evidence, and we cannot know what they are without going outside the record to ascertain.

In addition to the several statutory provisions mentioned, the defendants also offered in evidence decisions of the supreme court of Louisiana tending to show that such a contract as the one sued on was a " joint obligation," and not an obligation *" in solido,"* according to the statutory definition and presumption of that state. The plaintiff in the court below did not introduce in evidence to that court any of the Louisiana statutes or decisions bearing on the question. However, its counsel has cited to us some decisions of the supreme court of Louisiana which tend to show that the contract in question is an obligation *in solido* and not a joint obligation under the laws of that state.

Leaving out of consideration the decisions cited to us but not introduced in evidence to the court below, the contract would seem to be, according to the statutes and decisions introduced in evidence upon the trial of the case, a joint obligation, and not an obliga-

tion *in solido*. While we have grave doubts as to whether, under the statutes and decisions of Louisiana, the contract is joint in its nature and not *in solido*, yet these doubts principally arise upon consideration of those Louisiana decisions which for the purposes of this case we are not at liberty to regard as evidence, because not introduced as such upon the trial. They were not called to the attention of the court below. They are not in the record as part of the evidence in the case. The statutes and the prior decisions of this court preclude us from noticing them for the purpose of determining what in reality the law of Louisiana is. In *Hunter's Adm'r v. Ferguson's Adm'r*, 13 Kan. 462, 475, it was said :

"We have considered said section 758 ( 640 ) of the Alabama code as valid and operative, because the parties to this suit agreed that it was, and nothing was introduced in evidence which tended to show that it was not valid and operative. It is in fact however unconstitutional and void, and the supreme court of Alabama has recently held it to be unconstitutional and void. (*Ex parte James M. Amos*, decided by the supreme court of Alabama July 30, 1874.) We cannot take judicial notice of the constitution or laws or judicial decisions of Alabama, or of any other state. They must be proved by the introduction of evidence. (Gen. Stat. 700, § 370 ; *Porter v. Wells*, 6 Kan. 455 ; 1 Greenl. Ev. § 489 ; 2 Phil. Ev. (5 Am. ed., with Cowen & Hill's and Edwards' Notes), original, page 428, note 1.) It is true, for the purpose of construing our own laws, or of determining what our own laws are, we take judicial notice of everything that can in any manner aid us in such construction or determination, for we are bound to know what our own laws are without any proof thereof. And as we are bound to take judicial notice of what our own laws are, we are bound to take judicial notice of everything that will in any manner aid us in determining what our own laws are. For this purpose, and so far as they are

applicable, we may take judicial notice of the existence and history of the laws of every country and of every age. We may indeed take judicial notice of everything that can be known or understood of every law that has ever been passed, of every decision that has ever been promulgated, of every transaction that has ever occurred, of every event that has ever transpired, and of every fact that has ever existed. But except for the purpose of construing our own laws and of determining what they are, we can know but very little except through the medium of evidence. Except for that purpose we can know the laws of other states only as they are proved to us like other facts."

Our conclusion is that upon such evidence as was presented to the court below it correctly determined that the contract sued upon was a "joint obligation" as defined by the statutes of Louisiana, and correctly rendered judgment against the parties severally for their aliquot portions of it, and not *in solido* for the whole of it.

The defendants in error moved to dismiss the case upon two grounds strenuously urged by them. The motion was carefully considered by us but is not believed to be well taken. However, for the reasons above given, the judgment of the court below is affirmed.