INTERCONTINENTAL LEASING, INC.,
Plaintiff-Appellee,

v.

Chester A. ANDERSON, M.D., et al.,
Defendants-Appellants.

No. 79–68.

United States Court of Appeals
Tenth Circuit.

April 28, 1969.

Richard W. Stavely, Wichita, Kan., for plaintiff-appellee.

William L. Oliver, Jr., Wichita, Kan. (Jones & Givens, Tulsa, Okl., and Martin, Porter, Pringle, Schell & Fair, Wichita, Kan., on the brief) for defendants-appellants.

Before BREITENSTEIN, SETH and HICKEY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In this diversity action tried to the court without a jury, the plaintiff-appellee Intercontinental Leasing, Inc., recovered a joint and several judgment against the defendants-appellants in the amount of $47,581. On the appeal the questions are the jurisdiction of the trial court under the Kansas long-arm statute, the rejection of the defenses of accord and satisfaction and estoppel, the imposition of joint and several liability, and two specific items of damages.

Intercontinental is a Kansas corporation which supplies oil-well equipment on a rental basis. The defendants are all members of a partnership known as Petro-Cap Oil and Gas Program 1964. The partnership acquired working interests in five Kansas oil and gas leases, and in May, 1965, rented equipment from Intercontinental for the operation of the leases. This suit was brought to recover unpaid rental.

The defendants are all citizens of states other than Kansas and were served under the Kansas long-arm statute. Section 60–308(b) of the Kansas Code of Civil Procedure, K.S.A. 60–308(b), provides that a nonresident, who in person or through an agent or an instrumentality transacts any business within the state, submits himself to the jurisdiction of the Kansas courts.[1]

The partnership agreement says that it is made under "Chapter 323, Minnesota Statutes Annotated, as amended and supplemented, and the rights and liabilities of the Partners herein shall be as provided in that Act except as herein otherwise expressly stated and provided."[2] M.S.A. § 323.08 provides so far as material:

"Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership * * *."

The partnership agreement makes defendant Petro-Cap, Inc., the managing partner with "exclusive and sole management and control of the business" of the partnership. The remaining defendants, over 100 individuals, are investing partners who contributed to the capital of the partnership by purchasing units at a price of $5,000 each. The investing partners do not "participate" in the control of the partnership business but have certain rights including voting, inspection of records, information affecting the operations, and accounting.

The partnership was registered with the Securities and Exchange Commission and filed with it a prospectus covering the sale of units. The prospectus stated that:

"As partners, the investors may be liable either jointly, or jointly and severally, for sums in excess of the $5000 per unit originally subscribed."

The prospectus states that the subscriptions will be used to acquire interests "in proven, semi-proven and wild-

---

1. K.S.A. 60–308(b) in material part reads: "Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts: (1) The transaction of any business within this state; * * *."

2. Minnesota has the Uniform Partnership Act. The Uniform Limited Partnership Act is M.S.A. Chap. 322.

cat oil and gas leases" and that the operations will be carried on in Kansas and other states.

The Kansas long-arm statute applies if a defendant, either in person or through an agent or an instrumentality, has transacted any business in the state and the cause of action which is the basis for the suit arises from such transaction. Wilshire Oil Company of Texas v. Riffe, 10 Cir., 409 F.2d 1277, and National Bank of America at Salina v. Calhoun, D.Kan., 253 F.Supp. 346, 349. The investing partners argue that they transacted no Kansas business because the articles of partnership limit their power to participate in the control and management of the business. They point out that the articles provide that M.S.A., Chapter 323, controls the rights and liabilities of the partners "except as herein otherwise expressly stated and provided." The argument is unpersuasive because the articles do not limit or restrict the authority and power of Petro-Cap to act as agent of the partnership. M.S.A. § 323.08, provides that "every partner is an agent of the partnership for the purpose of its business."

The articles of partnership provide that the managing partner or its designee may hold title to partnership property and, in its discretion, may lease equipment needed for partnership operations. Petro-Cap, the managing partner, took the Kansas oil and gas leases in its own name. Also, it rented the equipment from Intercontinental in its own name. Petro-Cap in its answer admitted that it transacted business in Kansas.

Petro-Cap furnished to Intercontinental a copy of the prospectus which included as an appendix a copy of the articles of partnership. The credit committee of Intercontinental approved the rental application on the condition that the participants in the partnership were jointly and severally liable. Petro-Cap furnished to Intercontinental a list of the Petro-Cap stockholders who were identified as some of the investors in the partnership. The general manager of Intercontinental testified that in making the rental it relied on the credit of the investing partners.

In acquiring the leases and renting the equipment, Petro-Cap acted as agent for the partnership and within the scope of its authority. Its actions were in furtherance of the normal business of the partnership and bound the partnership. The activities of the partnership in Kansas satisfy the minimum-contacts test. See Curtis Publishing Company v. Cassel, 10 Cir., 302 F.2d 132, 136–138. The Kansas long-arm statute applies when a defendant "in person or through an agent or instrumentality" transacts business in the state. Through the instrumentality of the partnership, the individual partners purposefully availed themselves of the privilege of conducting business activities in Kansas and invoked the benefits and protections of its laws to satisfy their personal economic desires. This is enough to invoke the long-arm statute and to subject them to personal jurisdiction. Woodring v. Hall, 200 Kan. 597, 438 P.2d 135, and Wilshire Oil Company of Texas v. Riffe, 10 Cir., 409 F.2d 1277.

The defendants say that they are not jointly and severally liable for the judgment. This issue poses a choice-of-law question. In Kansas, general partners are jointly and severally liable. In Minnesota they are jointly liable for ordinary civil debts..

In diversity cases, federal courts apply the rules of the states in which they sit when deciding questions of conflict of laws. Haury v. Allstate Insurance Company, 10 Cir., 384 F.2d 32, 34. Kansas has held that in a contract case the law of the state in which the contract is to be performed governs. Alexandria, A. & Ft. S. R. Co. v. Johnson, 61 Kan. 417, 59 P. 1063, 1064. Here the rental contract was made in Kansas and was performed in Kansas and the suit was brought in a federal court sitting in Kansas.

The defendants urge that because status, which is asserted to bring

them within Kansas jurisdiction, is dependent on Minnesota law, that law controls the extent of liability. We are not persuaded. Status and the incidents of status are different. Here liability is an incident of status and is determinable under the law of the forum which has jurisdiction over the lawsuit. The defendants' reference to the provisions of the partnership agreement that each partner is liable "only for his ratable part" of any partnership liability is not pertinent because it relates to the liability of one partner to another and not to the liability of a partner to a third person for a civil debt of the partnership. In our opinion Kansas law controls and imposes joint and several liability.

The next question is whether recovery is barred by accord and satisfaction or by estoppel. After the partnership had defaulted in the rental, the credit manager of Intercontinental requested assignments of three leases so that Intercontinental might obtain better than salvage value for the equipment. Petro-Cap sent the assignments with a letter stating that they were "tendered with the understanding that PetroCap, Inc., is absolved of all liability, including past due rentals." Intercontinental replied that it would not absolve Petro-Cap of such liability. Thereafter the assignments were recorded. Petro-Cap requested return of the assignments but they were not returned. Petro-Cap then requested Intercontinental to take no further salvage action because a sale of the leases was under negotiation. Intercontinental complied with the request.

■■ In Kansas an accord and satisfaction is the adjustment of a disagreement over what is due and requires a meeting of the minds and sufficient consideration. Barnes v. Mid-Continent Casualty Company, 192 Kan. 401, 388 P.2d 642, 645. The record sustains the findings of the trial court that at the time there was no disagreement over the amount due and no meeting of the minds on the effect of the tender of the assignments. In the circumstances, the acts of the parties did not satisfy the Kansas rule on accord and satisfaction. See Kansas Power & Light Co. v. Hugoton Production Co., 10 Cir., 251 F.2d 946, 949.

■ The estoppel argument is unimpressive. The trial court found that the recording of the assignments was consistent with the understanding of the parties that the assignments were to be used to make advantageous sale or salvage arrangements. The recording in no way interfered with any sale by Petro-Cap. There is no showing that the retention or recording in any way prejudiced any right of the partnership or harmed the partnership.

The defendants claim that two items, totalling $1,454.38, should have been credited to them rather than charged to them. The rental agreement provided that title to the equipment remained in Intercontinental and that upon expiration of the term possession reverted to it. Intercontinental salvaged the equipment on the two leases and, after deducting the salvage cost, credited the defendants with the amount received. It says that it is entitled to the residual value of the equipment if it had not been so salvaged. The Intercontinental accountant added this residual value to the amount due. His figures in this regard are not challenged by the defendants. They object to the identification of the items as "Purchase Option." The trial court held that the term was "undescriptive and misleading" but that the sums represented thereby were due Intercontinental. We agree. Intercontinental was entitled to the value of the property at the expiration of the agreed term. The inclusion of the two items recognized this right.

Affirmed.