The RESOLUTION TRUST CORPORATION, Plaintiff,

v.

DELOITTE & TOUCHE, et al., (108 Defendants).

No. 92–C–408.

United States District Court, D. Colorado.

April 21, 1993.

Timothy Rastello, Denver, CO, for plaintiff.

Edwin S. Kahn, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff, the Resolution Trust Corporation (RTC), as receiver of Otero Savings and Loan Association (Otero), commenced this action against the defendants, Deloitte, Haskins & Sells (DH & S) and Deloitte & Touche (D & T)[1] and one hundred and five individual partners of DH & S and D & T. The RTC asserts claims for: (1) professional malpractice (first claim); (2) negligent misrepresentation (second claim); (3) gross negligence (third claim); (4) intentional spoliation of evidence (fourth claim); and (5) breach of contract (fifth claim).

The RTC has filed a motion pursuant to Fed.R.Civ.P. 23.2, 23(b)(1)(B) or 23(b)(3) to certify three defendant subclasses of D & T and DH & S partners. The proposed subclasses consist of: (1) current D & T partners who were DH & S partners when DH & S' actions giving rise to the claims occurred; (2) former partners of DH & S who were partners of DH & S when DH & S' actions giving rise to the claims occurred; and (3) current partners of D & T who are not former DH & S partners. D & T has responded by opposing the motion. Oral argument has been heard on the motion. Jurisdiction is alleged under 12 U.S.C. § 1441a and 28 U.S.C. § 1331.

Otero was a federally chartered savings and loan association, principally located in Colorado Springs, Colorado. The RTC was

1. D & T came into existence as a result of a merger between DH & S and Touche Ross, another national accounting firm.

appointed receiver for Otero on May 25, 1990. Otero engaged DH & S to conduct independent audits of Otero's consolidated financial statements for 1983 through 1988. The RTC's claims arise from the audits performed on Otero's financial statements, and from the defendants' alleged intentional destruction of its workpapers for the 1983 audit. The RTC contends that Otero incurred losses exceeding $150,000,000 as a result of the defendants' conduct.

Plaintiff seeks class certification of individual partner defendants because it asserts that the damages in this and other pending actions will exceed the insurance coverage and partnership assets available to satisfy an eventual judgment. Plaintiff contends that the class members it seeks to sue individually are those members of the partnership who are jointly and severally liable for the alleged wrongs.

### A. *Personal Jurisdiction.*

■ Defendants contend that this court lacks personal jurisdiction over the individual non-resident partners. The RTC responds that because the court has personal jurisdiction over the defendant partnerships and the resident defendant partners, personal jurisdiction exists over each of the nonresident defendant partners as well.

The Colorado long-arm statute extends jurisdiction to anyone who personally, or through an agent, engages in the transaction of any business within Colorado where the claim for relief arises from transaction of that business. Colo.Rev.Stat. § 13–1–124(1)(a). Jurisdiction also extends to anyone who personally, or through an agent, commits a tortious act within Colorado. Colo.Rev.Stat. § 13–1–124(1)(b). The Colorado long-arm statute codifies the minimum contacts principles set forth in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and extends the jurisdiction of Colorado courts to the fullest extent permitted by due process. *Brownlow v. Aman,* 740 F.2d 1476, 1481 (10th Cir.1984).

Defendants rely on *Sher v. Johnson,* 911 F.2d 1357 (9th Cir.1990) and *Ytuarte v. Gruner & Jahr Printing & Pub. Co.,* 935 F.2d 971 (8th Cir.1991), in support of their contention that jurisdiction over the partnership does not establish jurisdiction over the individual partners.

Defendants' argument, however, is foreclosed by binding Tenth Circuit precedent. *Intercontinental Leasing, Inc. v. Anderson,* 410 F.2d 303 (10th Cir.1969). There a Minnesota partnership and all its partners were sued in a federal court in Kansas to recover unpaid lease payments on oil and gas equipment. Defendants were nonresidents of Kansas and were served under the Kansas long-arm statute. The Court of Appeals held that the activities of the partnership satisfied, as to the individual partners, the minimum contacts due process test of *International Shoe. Id.* at 305. The court declared that:

> "Through the instrumentality of the partnership, the individual partners purposefully availed themselves of the privilege of conducting business activities in Kansas and invoked the benefits and protections of its laws to satisfy their personal economic desires. This is enough to invoke the long-arm statute and to subject them to personal jurisdiction.... *Wilshire Oil Co. of Texas v. Riffe,* 10 Cir., 409 F.2d 1277" *Id.*

Here, as in *Intercontinental Leasing,* through the instrumentality of the partnership, the individual partners purposefully availed themselves of the privilege of conducting business activities in Colorado and invoked the benefits and protections of its laws to satisfy their personal economic desires.

Defendants contend that the instant action is distinguishable from *Intercontinental Leasing.* First, they argue that the case is factually distinguishable because the partnership in *Intercontinental Leasing* was directed to making oil and gas investments in Kansas and thus the activities of the partnership as a whole focused on the forum state. That, however, is a distinction without a difference. The nature of the partnership's activities was not a factor relied on by the *Intercontinental Leasing* court. In order for a factual distinction to justify the avoidance of otherwise binding precedent, the distinguishing fact must have played an integral role in the court's decision.

Defendants further contend that the *Intercontinental Leasing* opinion only addressed whether there was personal jurisdiction under the Kansas long-arm statute, and thus did not reach the constitutional challenge asserted here. Defendants are mistaken. The *Intercontinental Leasing* court expressly stated that "[t]he activities of the partnership in Kansas satisfy the minimum-contacts test." 410 F.2d at 305. Moreover, the court cited *Wilshire Oil Co. v. Riffe,* 409 F.2d 1277 (10th Cir.1969), in support of its holding that there was personal jurisdiction over the individual partners. In *Wilshire,* the court stated, "essentially the same factors which enter into a determination that ... [the long-arm statute] authorizes the exercise of jurisdiction are involved in deciding whether the exercise of jurisdiction is constitutional." *Wilshire,* 409 F.2d at 1280, *quoting Woodring v. Hall,* 200 Kan. 597, 438 P.2d 135, 141 (1968). Thus, the *Intercontinental Leasing* court held that the exercise of jurisdiction over the non-resident partners was constitutional.

Finally, the defendants argue that the *Intercontinental Leasing* decision did not discuss the United States Supreme Court's current due process analysis. However, the defendants have not cited any Supreme Court decision that directly impacts the Tenth Circuit's reasoning in *Intercontinental Leasing.*

Although the defendants' contention that each partner's contacts with the forum state must be assessed individually has some appeal, in the absence of intervening United States Supreme Court or Tenth Circuit precedent holding that *Intercontinental Leasing* is not the law, I am bound to follow that decision.

### B. *Class Certification.*

Rule 23.2, Fed.R.Civ.P., provides that:
"An action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties may be maintained only if it appears that the *representative parties will fairly and adequately protect the interests* of the association and its members." (Emphasis added).

■ The requirement of "fair and adequate representation" is satisfied when: (1) the named representatives have common interests with the other class members; and (2) the class representatives will vigorously prosecute the interests of the class through qualified counsel. *See Alexander Grant & Co. v. McAlister,* 116 F.R.D. 583, 588 (S.D. Ohio 1987).

■ Here, the "fair and adequate representation" requirement of Rule 23.2 has been met. Defendants do not dispute that the named representatives have common interests with the other class members. The class representatives are all current or former partners who held positions of responsibility within DH & S and D & T. Moreover, this litigation is being handled by Sidley and Austin, the defendant's national counsel. As the briefs on this issue alone bear out, defense counsel will vigorously and competently protect the interests of the class members. Certainly there has been no lack of zeal among counsel on either side.

I further conclude that the RTC's delay in moving for certification will not prevent the class representatives from performing their duties to the other class members. Under the realities of the instant litigation, the RTC has moved for certification "as soon as practicable after commencement of the action." Fed.R.Civ.P. 23.

■ Defendants contend that even if the requirements of Rule 23.2 are met, the other prerequisites of Rule 23 also must be satisfied. Courts are in disagreement whether satisfaction of the other prerequisites of Rule 23 is necessary for certification under Rule 23.2.

After reviewing the cases cited by the parties, I am convinced that the Second Circuit's decision in *Curley v. Brignoli, Curley & Roberts Associates,* 915 F.2d 81, 96–97 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1430, 113 L.Ed.2d 484 (1991), provides the correct interpretation of Rule 23.2. Thus, I conclude for the reasons set out in *Curley,* that it is not necessary to satisfy the other prerequisites of Rule 23 if the requirements of Rule 23.2 are met.

■ However, even assuming that the other requirements of Rule 23 must be satisfied, class certification is still appropriate. Rule 23(a), Fed.R.Civ.P., provides that:

"One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

It is clear that the requirements of Rule 23(a) are satisfied here. It is estimated that there are over 1800 members of the proposed defendant class, rendering joinder impracticable. In addition, there are common questions of law or fact. Indeed, the theory of liability is common to all the class members. Moreover, the defenses of the representative parties will be typical because responsibility is based on joint and several liability. Finally, as set forth above, the named defendants will fairly and adequately protect the interests of the class members.

An action that meets the threshold requirements of Rule 23(a) may proceed if it meets one of the standards prescribed in Rule 23(b). Rule 23(b) provides, in pertinent part, that a class action may be maintained when the elements of Rule 23(a) are met and:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of . . .

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests."

■ For the reasons set forth in *RTC v. Chapnick*, 89–6572 slip op. at 7–12 (July 17, 1992 D.Fla.) and *RTC v. KMPG Peat Marwick*, 92–1373 slip op. at 6–7, 1992 WL 245705 (E.D.Pa. Sept. 22, 1992), I conclude that this action will "as a practical matter be dispositive of the interests" of individual partners not parties to this litigation or "will substantially impair or impede their ability to protect their interests." Rule 23(b)(1)(B).[2]

### C. *Notice and Opting Out.*

Under Rules 23.2 and 23(b)(1)(B) absent class members have no right to notice or an opportunity to opt out. *See* Fed.R.Civ.P. 23(c). This court, however, may order that notice be given "for the protection of the members of the class or otherwise for the fair conduct of the action." Fed.R.Civ.P. 23(d)(2).

■ I conclude that notice shall be provided to the three defendant subclasses in the format suggested by the RTC. Such post-certification notice satisfies the requirements of due process. Certification has been hotly contested. In addition, each absent class member will have an opportunity to intervene if he or she so chooses, and may otherwise plan his or her affairs in light of the claims asserted here. Finally, in the event the class members strenuously dispute the facts underlying this certification they may file a motion to decertify any of the classes.

Within eleven days after this order is filed, the defendants shall provide notice to all absent class members who are current partners of D & T, and shall provide to the plaintiff the last known address and phone number of each absent class member who is not a current D & T partner, so that the plaintiff can provide notice.

■ Defendants have requested that the court allow class members an opportunity to opt out. Courts have permitted Rule 23(b)(1)(B) class members to opt out. See, e.g., *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1304–05 (2d Cir.1990). I am not persuaded, however, that permitting class members to opt out would facilitate the instant action. Indeed, to allow members to opt out here would vitiate the central purpose of an action under either Rule 23.2 or Rule 23(b)(1)(B). Moreover, in the instant action, preclusion of a right to opt out does not violate due process. *See Robertson v. National Basketball Association*, 556 F.2d 682, 686 (2d Cir.1977).

---

**2.** The subclasses could also be certified under Rule 23(b)(3). However, when certification is available under both Rule 23(b)(1)(B) and 23(b)(3), certification under 23(b)(1)(B) is preferred to avoid multiplicity of effort. *KMPG Peat Marwick*, slip op. at 9–10 and cases cited therein.

### D. *Subclasses Certified.*

The proposed subclasses consist of: (1) current D & T partners who were DH & S partners when DH & S' actions giving rise to the claims occurred; (2) former partners of DH & S who were partners of DH & S when DH & S' actions giving rise to the claims occurred; and (3) current partners of D & T who are not former partners of DH & S.

The first two subclasses are ordered certified subject to the requirement that the RTC articulate specific dates of each partner's partnership. The third subclass also is ordered certified. However, the defendants may move to decertify the third subclass within eleven days after this order is filed. The RTC shall respond to any such motion to decertify within eleven days after it is filed and served.

Accordingly, IT IS ORDERED that the RTC's motion for class certification is granted subject to the conditions set forth in this order.