**MARRIOTT PLP CORPORATION, et al. Plaintiffs,**

v.

**John S. TUSCHMAN, et al. Defendants.**

**Civ. A. No. PJM 94–3492.**

United States District Court, D. Maryland.

Oct. 30, 1995.

Frederick Robinson, Washington, DC, for plaintiffs.

Roger W. Titus, David G. Lane, Venable, Baetjer & Howard, Rockville, MD, John Henry Lewin, Jr., Venable, Baetjer & Howard, Baltimore, MD, Kyle L. Dickson, David H. Berg, Houston, TX, Daniel Abraham Bell, McLean, VA, for defendants.

*OPINION*

MESSITTE, District Judge.

I.

■ Plaintiffs Marriott PLP Corporation, Host Marriott Corporation, and Marriott International, Inc. (collectively "Marriott") have filed this declaratory judgment action in an attempt to resolve disputes arising from the parties' participation in a venture known as the Chesapeake Hotel Limited Partnership ("CHLP"). Marriott has named John S. Tuschman ("Tuschman") as an individual defendant and proposes that he be certified as representative of a class of limited partner investors in the venture. Tuschman asks the Court to dismiss the action for lack of personal jurisdiction. The Court agrees that personal jurisdiction over Tuschman is lacking and will dismiss the complaint as to him. Dismissal of the suit in its entirety follows as a matter of course.[1]

II.

■ When a court's personal jurisdiction is challenged, the question is one for the judge, with the burden on the plaintiff to prove the grounds for jurisdiction by preponderance of the evidence. *Mylan Lab., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir.1993). When the court decides a personal jurisdiction dismissal motion without an evidentiary hearing, a plaintiff need only prove a *prima facie* case, with all reasonable inferences being resolved in plaintiff's favor. *Id.* at 60.

III.

The relevant undisputed facts are these:

CHLP is a Delaware limited partnership with its principal place of business in Maryland. Plaintiff Marriott PLP Corporation ("Marriott PLP"), CHLP's general partner, is a Delaware corporation having its principal place of business in Maryland. CHLP was formed to own and operate nine hotels to be purchased from Marriott Corporation, predecessor of Plaintiff Host Marriott Corporation, and managed by Marriott Hotels, Inc., predecessor of Plaintiff Marriott International, Inc. Host Marriott Corporation and Marriott International, Inc. are also Delaware corporations having their principal places of busi-

---

**1.** Although Marriott has sought to certify a mandatory defendant class in this case, Tuschman is the only named defendant. Because the action is dismissed as to Tuschman, no defendant remains and the case is therefore at an end. Marriott's Motion for Class Certification is consequently moot.

ness in Maryland. The nine hotels owned by CHLP are located in Colorado, Illinois, Massachusetts, Minnesota, New Jersey, North Carolina, Oklahoma, Texas, and Virginia.

Defendant Tuschman is a resident of Texas. He has never resided or been employed in Maryland and has no bank account or real property interests here. He became a limited partner in CHLP in 1984, signing the limited partnership agreement outside this State. Although the CHLP subscription documents require payment of the first installment of the purchase price for a limited partnership interest to be sent to New York, Marriott claims that Tuschman submitted his payments to CHLP in Maryland. Further, although Tuschman never in fact received any distributions from the venture, Marriott submits that any such distributions would have been made from Maryland. While there is no choice of forum clause in the partnership agreement, it contains a choice of law clause indicating that Delaware law applies.

On February 9, 1994, acting through Texas counsel, Tuschman sent a letter to Marriott demanding compensation for damages allegedly sustained by him as a result of Marriott's fraud and fiduciary and contractual breaches. Not long after, Tuschman began corresponding with other limited partners in CHLP throughout the country, entreating them to join him in litigation against Marriott. Additionally, at a series of meetings held around the country, Tuschman asked limited partners to contribute money for litigation expenses. One of these meetings took place in Columbia, Maryland, on September 21, 1994. From all that appears, Tuschman's attendance at this meeting represents the only occasion that he was physically present in this State.

■ In December 1994, in tandem with a substantially similar declaratory judgment action filed in the Circuit Court for Montgomery County, Maryland, Marriott filed the present federal action. In both suits, Marriott in essence asks that the court declare that it has not in fact committed breaches of the sort Tuschman's attorney charged in his letter of February 1994.[2] In March 1995, Tuschman and several other CHLP limited partners sued Marriott in the Circuit Court for Harris County, Texas. Their suit also alleges in substance the breaches that were complained of in the February 1994 letter.[3]

## IV.

■ A federal district court has personal jurisdiction over a defendant who could be subjected to the jurisdiction of a state court in the state in which the district court is located. Fed.R.Civ.P. 4(k)(1)(A). To confirm its exercise of personal jurisdiction, the court must make two findings: First, that the state long-arm statute authorizes the exercise of jurisdiction; Second, that the assertion of jurisdiction is consistent with constitutional due process. *Ellicott Machine Corp., Inc. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir.1993). The relevant portion of Maryland's long-arm statute provides that a court may exercise personal jurisdiction over a person who directly or by an agent "[t]ransacts any business or performs any character of work or service in the State." Md.Cts. & Jud.Proc.Code Ann. § 6–103(b)(1) (1995). Because this portion of Maryland's long-arm statute permits jurisdiction to the limits permitted by federal due process, the normal two-step inquiry, in this district, merges into one. *Ellicott Machine Corp., supra*, at 477; *see also Snyder v. Hampton Indus., Inc.*, 521 F.Supp. 130, 136 (D.Md. 1981) (federal courts "have analyzed 'transacting business' cases [under § 6–103(b)(1) ] under the Due Process standards developed by the Supreme Court").

---

**2.** Marriott seeks to base this Court's jurisdiction on the existence of a federal question, namely its own possible violation of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* Although Marriott cites diversity of citizenship as alternative ground, diversity exists only as between Marriott and Tuschman individually. Since a number of other limited partners are conceded to be Maryland residents, diversity jur-

isdiction could only exist if Tuschman were certified as representative of a defendant class. *See Snyder v. Harris*, 394 U.S. 332, 339–40, 89 S.Ct. 1053, 1058–59, 22 L.Ed.2d 319 (1969).

**3.** Notably, however, the complaint in Texas state court omits any cause of action based on federal securities law.

This Court recently had occasion to consider the matter of personal jurisdiction in another case and reaffirms that analysis here:

Absent the traditional bases of consent, domicile or physical presence, the extent to which a federal court can exercise personal jurisdiction depends on the nature and quality of a defendant's "contacts" with the forum state. If a nonforum defendant's activities in the forum state are "continuous and systematic," a federal court may exercise jurisdiction as to any cause of action—even if unrelated to defendant's activities within the state. *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437 [72 S.Ct. 413, 96 L.Ed. 485] (1952). If a nonforum defendant's "contacts" within the forum are not sufficiently "continuous and systematic" for general jurisdiction, it may still be subject to specific jurisdiction for claims related to its activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 [105 S.Ct. 2174, 85 L.Ed.2d 528] (1985). In either case, due process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 [66 S.Ct. 154, 158, 90 L.Ed. 95] (1945) (quotation omitted). The test is whether, in a given case, the forum state has a sufficient relationship with the defendant and the litigation to make it reasonable to require defense of the action in a federal court located in the forum state.

"[B]road constructions of general jurisdiction should be generally disfavored." [*Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1200 (4th Cir.1993).] Singular or isolated items of activities in a state do not suffice for general jurisdiction, nor does continuous activity of some sort necessarily satisfy the requirement. *Id.* at 1199. The activities must be "so substantial and of such a nature as to justify suit against [the nonforum defendant] on causes of action arising from dealings entirely distinct from those activities." *Id.*

Specific jurisdiction involves an expanded factual inquiry into the precise nature of the defendant's contacts with the forum, the relationship of those contacts with the cause of action, and a weighing of whether these contacts satisfy "threshold demands of fairness." *Presbyterian Univ. Hosp. v. Wilson,* 337 Md. 541, 552, 654 A.2d 1324, 1330 (1995). Specific personal jurisdiction requires a tri-partite showing: (1) that the nonforum defendant purposely directed its activities toward residents of the forum state or purposely availed itself of the privilege of conducting activities therein; (2) that plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) that the forum's exercise of personal jurisdiction in the case is reasonable, *i.e.* is consistent with "fair play and substantial justice." *Burger King Corp.,* 471 U.S. at 477–78 [105 S.Ct. at 2185].

*Hardnett v. Duquesne Univ.,* 897 F.Supp. 920, 922 (D.Md.1995).

## V.

Marriott does not argue that Tuschman is subject to general jurisdiction in Maryland and for good reason. In no way can it plausibly be argued that Tuschman's contacts with Maryland were so "continuous and systematic" that he should be susceptible to any sort of claim that might be filed in Maryland, including claims unrelated to the specific transaction in this case. The sole question is whether Tuschman's contacts with Maryland are sufficient to support specific jurisdiction.

Marriott points to a number of Tuschman's contacts with Maryland that purportedly establish specific jurisdiction in this Court: that he is a limited partner in CHLP, which has its principal place of business in Maryland; that CHLP's general partner, Marriott PLP, has its principal place of business in Maryland; that Tuschman's contributions to CHLP were sent to Maryland and any expected distribution from CHLP to Tuschman would have come from Maryland; and that Tuschman met with other CHLP limited partners in Maryland in September 1994 in an effort to persuade them to join a lawsuit against Marriott. By these contacts, say Marriott, Tuschman purposely availed himself of the privilege of conducting activities

here and it would therefore be reasonable for the court to exercise jurisdiction over him.

▇ To begin, Tuschman's status as a limited partner in CHLP, even though the latter's principal place of business is in Maryland, does not in and of itself confer personal jurisdiction over Tuschman in this Court. Shareholders in a corporation do not subject themselves to personal jurisdiction in the forum in which the corporation was formed. *Shaffer v. Heitner,* 433 U.S. 186, 216, 97 S.Ct. 2569, 2585, 53 L.Ed.2d 683 (1977). Similarly, forums in which a corporation does business do not automatically have personal jurisdiction over the corporation's shareholders. *Jemez Agency, Inc. v. CIGNA Corp.,* 866 F.Supp. 1340, 1348 (D.N.M.1994); *see also West v. Vandenheuvel,* 1995 WL 360461, at *4 (N.D.Ill. June 16, 1995) ("status as a shareholder or employee of a corporation does not provide personal jurisdiction where that person did not participate in the alleged injurious conduct").

The same rationale applies to limited partners who, like shareholders, are passive investors with limited liability. *See Regency Hous. & Drilling Ltd. Partnership I v. Cohen,* 1991 WL 190311, at *5 (Del.Super.Ct. Sept. 11, 1991) ("Inasmuch as a limited partnership represents a security investment analogous to the purchase of stock in a corporation, plaintiff's contention [that defendant's status as a limited partner satisfies the minimum contacts test] is prohibited by [*Shaffer v. Heitner* ]."); *see also Generale Bank, New York Branch v. Choudury,* 776 F.Supp. 123 (S.D.N.Y.1991), *rev'd on other grounds,* 779 F.Supp. 303 (S.D.N.Y.1991) (granting nonresident limited partner's motion to dismiss for lack of personal jurisdiction); *Sender v. Powell,* 902 P.2d 947 (Colo. Ct.1995) (holding that defendant merely held a passive interest in the partnership and that such contact was too insubstantial to provide the requisite contacts with Colorado to allow the constitutional exercise of long-arm jurisdiction over him); *Renda v. Peoples Fed.Sav. & Loan Ass'n,* 538 So.2d 860, 863 (Fla.Dist. Ct.App.1988) (holding that nonresident limited partners did not have the necessary minimum contacts to sustain personal jurisdiction in Florida although partnership's purpose

was to develop property in Florida). *Morgan Guar. Trust Co. of New York v. Blacksburg Assocs., L.P.,* 1990 WL 209297 (E.D.Pa. Dec. 13, 1990), which Marriott cites as contrary authority, is not only against the weight of the case law; it fails to provide any reasoned basis for distinguishing between limited partnerships and corporations with regard to the amenability of individual participants to suit.

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), and *Intercontinental Leasing, Inc. v. Anderson,* 410 F.2d 303 (10th Cir.1969), putative weapons in Marriott's arsenal, fail to advance its cause. In *Burger King,* the nonforum defendant was a franchisee of plaintiff corporation and as such far more involved in plaintiff's home state operations than a passive investor would be. In *Intercontinental Leasing,* although nonforum partners were held subject to personal jurisdiction in the partnership's home state, those defendants were *general* partners who had agreed to be jointly and severally liable for sums in excess of their capital contributions. "The extension of jurisdiction through a partnership to nonparticipant, nonresident partners is predicated upon the unique liability and agency structure of a partnership, where *general* partners are both principals and agents of the partnership." *West v. Vandenheuvel,* 1995 WL 360461, at *4 (N.D.Ill. June 16, 1995) (emphasis added).

Marriott places great emphasis on the fact that Marriott PLP, CHLP's general partner, has its principal place of business in Maryland, arguing that since business decisions of CHLP were made in Maryland, Tuschman should have expected the possibility of being haled into court here. Tuschman responds that however much Marriott PLP might have acted as the agent of CHLP in Maryland, it never acted as Tuschman's agent in this State or anywhere. The Ninth Circuit, in *Sher v. Johnson,* 911 F.2d 1357 (9th Cir. 1990), has exposed the fallacy of Marriott's argument:

[Plaintiffs] may have been misled into thinking that the contacts of the partnership may be imputed to the partners because the reverse is true: The contacts of

the partners may establish jurisdiction over the partnership. This is so because each partner acts as an agent of the partnership when carrying on the business of the partnership in the usual way. However, while each partner is generally an agent of the partnership for the purpose of its business, he is not ordinarily an agent of his partners. Thus, a partner's actions may be imputed to the partnership for the purpose of establishing minimum contacts, but ordinarily may not be imputed to the other partners. In this case, the district court has jurisdiction over only those individual partners who personally established the requisite minimum contacts with California.

*Id.* at 1366 (citations omitted). The Court finds Marriott's arguments relating to the various Maryland activities of CHLP and Marriott PLP beside the point. Marriott is suing Tuschman, not CHLP.

■ Indeed, virtually all of Tuschman's purported contacts with Maryland are no more than a catalogue of the specific ways in which a limited partner might expectably function anytime the limited partnership is located in one state and the limited partner in another. He would send his subscription payments to the home state of the partnership and presumably could expect to receive distributions from that location. At the same time, he would ordinarily have no reason to conduct any other business of the partnership in its home state nor even, at least in his capacity as a limited partner, to travel there. He would remain essentially passive. Simply reciting a nonforum limited partner's usual contacts, as Marriott attempts to do, does not alter the logic of the cases holding that a nonforum limited partner ordinarily lacks sufficient contacts with the partnership's home state to justify personal jurisdiction there.

■ That Tuschman came to Maryland in September of 1994 soliciting support for litigation against Marriott does not affect the jurisdictional calculus, but for a quite different reason.[4] A defendant's contacts with a

forum state, for specific jurisdiction purposes, are measured as of the time the claim arose. *See, e.g., Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir.1990) ("Only contacts occurring prior to the event causing the litigation may be considered."); *see also Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 287 n. 2 (4th Cir.1987). Marriott itself claims that this suit "arises out of" the letter from Tuschman's Texas counsel in February 1994, whereas Tuschman's sole visit to this state came in September, 1994. But, more fundamentally, the event causing this litigation is not the complaint Tuschman made in 1994; it concerns the purported misrepresentations made by Marriott in connection with the sale "in or around 1984" of limited partnership interests in CHLP, 10 full years earlier.

Marriott, it is true, perhaps to make it appear that this litigation "arises out of" Tuschman's forum-related contacts including his physical presence here, attempts to characterize the case as one that looks forward to resolve potential future controversies. But the characterization cannot fairly stand; at least insofar as its federal aspect is concerned, this is fundamentally a suit about the propriety of Marriott's past actions. It is no more forward looking than any suit that adjudicates past actions; every verdict on past conduct is a signal as to what future conduct should be.

The Court thus declines to count Tuschman's limited presence in Maryland in September, 1994 as a contact for purposes of evaluating whether he had sufficient minimum contacts with this State. But, even if it were included, the sum of Tuschman's contacts, in the Court's view, would fall short of the minimum necessary to satisfy the requirements of fair play and substantial justice.

## VI.

Still, Marriott PLP Corporation argues that the minimum contacts test should be lessened in this case in light of various other

---

4. Prior to this meeting, Tuschman had been in contact with other CHLP investors in Maryland by mail or telephone. Clearly, personal jurisdiction cannot be based on such contacts. *Craig v. General Fin. Corp.*, 504 F.Supp. 1033, 1038 (D.Md.1980).

factors, including Maryland's interest in adjudicating the dispute, Plaintiffs' interest in obtaining effective relief, and the interstate judicial system's interest in obtaining the most efficient resolution of the controversy. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–77, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985).[5] "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* at 477, 105 S.Ct. at 2184.

 Assuming this is true, the "other factors" mentioned in *Burger King* do not unambiguously point in favor of the Court exercising jurisdiction in this case. While Maryland undoubtedly has some interest in adjudicating the controversy in that Marriott is physically headquartered here, it is difficult to see why Maryland's interest is greater than that of Texas, where Tuschman resides and where Marriott also does business and is unquestionably amenable to suit. The Court also notes that while there is no choice of forum clause in the partnership agreement, the choice of law clause makes the law of Delaware, not Maryland or Texas, applicable. Maryland surely has no greater interest in seeing to the application of Delaware law than Texas does. At the same time, Marriott's interest in obtaining effective relief would ultimately be no less served by this Court's deferring to the Texas state action. The suggestion that retention of the federal action in Maryland will reduce the possibility of inconsistent verdicts is only superficially persuasive. Apart from the dubiety of certifying a mandatory defendant class where, as here, the proposed class representative is unwilling to serve, nothing prevents Marriott from asking the Texas state court, consistent with Texas law and practice, to certify a plaintiff's class in order to minimize the prospect of inconsistent verdicts.[6]

Then too, it is debatable whether a federal forum in Maryland would provide a more efficient resolution of the controversy, a point which will be addressed more fully in a moment in connection with the Court's discussion of the fact that this is a declaratory judgment action which the Court has discretion not to entertain. Finally, the burden on Tuschman of having to litigate in Maryland, a factor which Marriott PLP omits to mention, also makes inappropriate any lessening of the ordinarily required showing of minimum contacts. Substantial justice and fair play would not be served by permitting suit to proceed against Tuschman in this state.

## VII.

If the foregoing were not enough, the Court feels compelled to revisit an issue that earlier in these proceedings it chose to view more favorably to Marriott, namely the propriety *vel non* of proceeding with this declaratory judgment action in view of the pendency of an essentially parallel action in Texas state court.[7] Upon reconsideration, the Court concludes that there is good cause to decline to grant declaratory relief in this case, wholly apart from reasons of jurisdictional insufficiency.

 Federal courts enjoy wide discretion with regard to whether declaratory judgment suits should be entertained. *E.g., A.L. Mechling Barge Lines v. United States,* 368 U.S. 324, 331, 82 S.Ct. 337, 341, 7 L.Ed.2d 317 (1961); *United States v. Washington,* 759 F.2d 1353, 1356 (9th Cir.1985). A district court's discretion to grant such relief ordinarily should not be exercised "where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620

---

**5.** Marriott PLP omits from its list "the burden on the defendant", which is also cited as a factor by the *Burger King* court. *Id.* at 477, 105 S.Ct. at 2184.

**6.** *See* Tex.R.Civ.P. 42(b).

**7.** Prior to his present motion to dismiss for lack of personal jurisdiction, Tuschman filed a motion to dismiss based on the pendency of the Texas

state court action. The Court denied that motion which, in light of the jurisdictional arguments, it now reconsiders and in effect grants. This should demonstrate, both to the Court and counsel, the perils of deciding motions to dismiss piecemeal. Depending on the question being asked, policy concerns may assume very different proportions.

(1942). Such relief may be denied even if the state court suit was filed after the federal declaratory relief action. *See, e.g., Aetna Casualty & Sur. Co. v. Jefferson Trust & Sav. Bank,* 993 F.2d 1364, 1365–66 (8th Cir. 1993).

At the time the Marriott parties filed this suit in Maryland, they were aware that substantially identical litigation was imminent and that, in all probability, it would be filed in Texas state court. The present suit is unquestionably a result of the proverbial race to the courtroom door. *See DeFeo v. Procter & Gamble Co.,* 831 F.Supp. 776 (N.D.Cal.1993). Seizing on its own possible federal securities law violation, a potential cause of action mentioned in the February, 1994 correspondence from Tuschman's Texas attorney but one that Tuschman himself did not ultimately pursue in Texas state court and one that he has expressly disavowed before this Court, Marriott attempts to establish federal question jurisdiction in this Court. Yet what Marriott asks the Court to declare is that it did *not* violate that law, the very law on which the Court's jurisdiction depends. To permit federal question jurisdiction to be based on the proposition that Marriott did *not* violate federal securities law would in effect be an invitation to any party to seek admittance to federal court simply by asking for declaratory relief that its actions did not violate one or more federal laws. *Such a proposition falls of its own weight.*

Finally, as indicated in connection with the minimum contacts analysis, insofar as the distinctly federal issue is concerned, this is fundamentally a suit that looks backward to adjudicate past actions rather than forward to settle future actions. It is, in other words, one which calls for little, if any, declaratory relief at all.

Considering the paucity of Tuschman's contacts with the State of Maryland, as well as the compelling reasons for the Court, in its discretion, to decline to grant declaratory relief, the Court has determined to grant Defendant's Motion to Dismiss.

A separate Order will issue.