[No. C060886. Third Dist. July 30, 2010.]

SACRAMENTO SUNCREEK APARTMENTS, LLC, et al., Plaintiffs and Appellants, v.
CAMBRIDGE ADVANTAGED PROPERTIES II, L.P., et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I and II of the Discussion.

2

## COUNSEL

Flynn/Williams, Scott Williams and Stephen M. Flynn for Plaintiffs and Appellants.

Low, Ball & Lynch, Guy W. Stilson and Christine B. Reed for Defendants and Respondents.

## OPINION

**HULL, J.**—California's long-arm statute permits the exercise of personal jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) Under the due process clause of the United States Constitution, a nonresident may be subject to personal jurisdiction in the forum state if he has maintained sufficient purposeful contacts with the state, the claims asserted against him arise from those contacts, and the exercise of jurisdiction comports with fair play and substantial justice. (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268–269 [127 Cal.Rptr.2d 329, 58 P.3d 2].)

In this matter, plaintiffs assert claims against two nonresident limited partners of an Oregon limited partnership that owned and operated an apartment complex in this state for many years. The claims arise from mold discovered at the apartment complex after it was sold to plaintiffs. However, prior to the assertion of claims against them, the nonresident limited partners, who were themselves limited partnerships, liquidated their interests in the Oregon limited partnership and dissolved.

Despite their dissolutions, the nonresident limited partners specially appeared in this action and moved to quash service and to dismiss. The trial court concluded it lacks personal jurisdiction over the limited partners and granted the motion. Plaintiffs appeal.

We agree there is no personal jurisdiction under the circumstances presented. The only contact between the nonresident limited partners and this state was their investment in a partnership that operated in this state, and plaintiffs' claims do not arise from that investment but from the partnership's business. We therefore affirm the order granting the motion to quash and to dismiss.

FACTS AND PROCEEDINGS

Defendant Cambridge Advantaged Properties II, L.P. (CAP II), was a limited partnership formed on June 25, 1985, under the laws of the State of Delaware. It had approximately 3,000 limited partners who contributed over $35 million in assets. Defendant Related and Cambridge Associates Limited Partnership (RCALP) was also a Delaware limited partnership that served as the general partner for CAP II. (CAP II and RCALP are hereafter referred to collectively as defendants.)

Defendants invested as limited partners in other limited partnerships (project partnerships) that purchased or leased and operated apartment complexes for low- and moderate-income tenants. One such project partnership was Suncreek-268, an Oregon limited partnership, which owned and operated Sacramento Suncreek Apartments (Suncreek Apartments), an apartment complex located in Sacramento. Defendants invested as limited partners in Suncreek-268 on or about December 20, 1985. At the time, all construction on the apartment complex had been completed and it was operating and producing income.

Except for their ownership interest in Suncreek-268, defendants owned no property in California. Their offices and personnel were located in New York, New York, and they conducted no other business in California.

On June 29, 2001, Suncreek-268 sold Suncreek Apartments to plaintiff Sacramento Suncreek Apartments, LLC (Sacramento Suncreek).

By 2001, most of the limited partnership interests held by defendants in the various project partnerships, including Suncreek-268, had been liquidated, and defendants began winding up their affairs.

In 2002, mold was discovered at Suncreek Apartments and tenants began filing suit against Sacramento Suncreek and Suncreek-268. The apartments were vacated in 2003, and the lawsuits were settled in 2004 and 2005. Sacramento Suncreek and its administrative member, plaintiff Commercial Ventures, Inc. (Commercial Ventures), suffered losses as a result. (Sacramento Suncreek and Commercial Ventures are hereafter referred to collectively as plaintiffs.)

On June 17, 2005, plaintiffs initiated this action against Suncreek-268 and others alleging, among other things, negligent construction of the Suncreek Apartments, breach of contract, and fraud. Plaintiffs later added defendants as Doe defendants on their claims for negligent construction, breach of implied warranty, breach of contract, and equitable indemnity.

On September 23, 2005, CAP II filed a certificate of cancellation in Delaware, the final step in winding up its affairs. RCALP filed a certificate of cancellation on May 23, 2007. At the time of such filings, neither defendant was aware of plaintiffs' lawsuit or the alleged mold problems.

On September 25, 2008, defendants specially appeared and moved to quash service and to dismiss the complaint as to them. They argued they can no longer be sued as legal entities and the trial court lacks personal jurisdiction over them.

Plaintiffs opposed the motion, arguing defendants had sufficient minimum contacts to support personal jurisdiction. Plaintiffs further argued that, despite dissolution of defendants, plaintiffs may recover from defendants' partners, at least to the extent of distributions they received upon dissolution. Plaintiffs also requested leave to amend the complaint.

The trial court granted the motion to quash and to dismiss. The court concluded plaintiffs must first proceed against defendants in the Delaware Court of Chancery to set aside the dissolutions. The court also concluded defendants lacked sufficient minimum contacts to allow the exercise of personal jurisdiction over them. Finally, the court denied plaintiffs' request for leave to amend.

DISCUSSION

I, II[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[*]See footnote, *ante*, page 1.

## III

### *Personal Jurisdiction*

Plaintiffs contend the trial court erred in concluding it lacks personal jurisdiction over defendants. They argue defendants had sufficient contacts with the State of California to warrant the exercise of jurisdiction by virtue of their investment in a limited partnership whose sole business was to own and operate an apartment complex in this state. According to plaintiffs, defendants chose to invest in this state, became 99 percent owners of a California-based entity, financed their purchase using California public bonds, maintained their investment in the state for 15 years, enjoyed depreciation deductions on the California property, and received income from the operation and sale of the California real estate.

█ California courts may exercise personal jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) "The Due Process Clause [of the United States Constitution] protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' *International Shoe Co.* v. *Washington* [(1945) 326 U.S. 310, 319 [90 L.Ed. 95, 104, 66 S.Ct. 154]]. By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' *Shaffer* v. *Heitner*, 433 U. S. 186, 218 [53 L.Ed.2d 683, 97 S.Ct. 2569] (1977) (STEVENS, J., concurring in judgment), the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit,' [citation]." (*Burger King Corp.* v. *Rudzewicz* (1985) 471 U.S. 462, 471–472 [85 L.Ed.2d 528, 540, 105 S.Ct. 2174], fn. omitted (*Burger King*).)

█ The exercise of personal jurisdiction over a nonresident defendant comports with constitutional limitations "if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' " (*Vons Companies, Inc.* v. *Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 [58 Cal.Rptr.2d 899, 926 P.2d 1085] (*Vons*), quoting *Internat. Shoe Co.* v. *Washington, supra*, 326 U.S. at p. 316 [90 L.Ed. at p. 102].)

"Under the minimum contacts test, 'an essential criterion in all cases is whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that State.' (*Kulko v. California Superior Court* (1978) 436 U.S. 84, 92 [98 S.Ct. 1690, 1697, 56 L.Ed.2d 132], quoting *Internat. Shoe, supra*, 326 U.S. at pp. 316–317, 319 . . . .) '[T]he "minimum contacts" test . . . is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present.' (*Kulko*, at p. 92 . . . , quoting *Hanson v. Denckla* (1958) 357 U.S. 235, 246 [78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283] (*Hanson*).) '[T]his determination is one in which few answers will be written "in black and white. The greys are dominant and even among them the shades are innumerable." ' (*Kulko*, at p. 92 . . . , quoting *Estin v. Estin* (1948) 334 U.S. 541, 545 [68 S.Ct. 1213, 1216, 92 L.Ed. 1561].)" (*Pavlovich v. Superior Court, supra*, 29 Cal.4th at pp. 268–269.)

■ "Personal jurisdiction may be either general or specific." (*Vons, supra*, 14 Cal.4th at p. 445.) "General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are substantial, continuous, and systematic." (*F. Hoffman-La Roche, Ltd. v. Superior Court* (2005) 130 Cal.App.4th 782, 796 [30 Cal.Rptr.3d 407].) In the absence of general jurisdiction, a court may exercise specific jurisdiction over a nonresident defendant where "(1) 'the defendant has purposefully availed himself or herself of forum benefits' (*Vons, supra*, 14 Cal.4th at p. 446); (2) 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum" ' (*ibid.*, quoting [*Helicopteros Nacionales de Colombia v. Hall* (1984)] 466 U.S. [408,] 414 [53 L.Ed.2d 683, 97 S.Ct. 2569]); and (3) ' "the assertion of personal jurisdiction would comport with 'fair play and substantial justice' " ' (*Vons, supra*, 14 Cal.4th at p. 447, quoting *Burger King*[, *supra*, 471 U.S. at p. 476 [85 L.Ed.2d at p. 543, 105 S.Ct. 2174]] . . .)." (*Pavlovich v. Superior Court, supra*, 29 Cal.4th at p. 269.)

■ When a nonresident defendant challenges personal jurisdiction, the initial burden is on the plaintiff to "prove, by a preponderance of the evidence, the factual basis that would justify the exercise of jurisdiction. [Citations.] If the plaintiff meets this burden, it is then up to the defendant to show that the exercise of jurisdiction would be unreasonable." (*F. Hoffman-La Roche, Ltd. v. Superior Court, supra*, 130 Cal.App.4th at p. 794.)

" 'On review, the question of jurisdiction is, in essence, one of law. When the facts giving rise to jurisdiction are conflicting, the trial court's factual determinations are reviewed for substantial evidence. [Citation.] Even then, we review independently the trial court's conclusions as to the legal significance of the facts. [Citations.] When the jurisdictional facts are not in dispute,

the question of whether the defendant is subject to personal jurisdiction is purely a legal question that we review de novo. [Citation.]' [Citations.] The ultimate issue of whether an exercise of jurisdiction is fair and reasonable is a legal determination subject to de novo review on appeal. [Citation.]" (*Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 568 [55 Cal.Rptr.3d 803].)

Plaintiffs make no attempt to establish that defendants have such substantial, continuous, and systematic contact with the State of California as to warrant a finding of general jurisdiction. They rely instead on specific jurisdiction.

Defendants contend there can be no specific jurisdiction here, because limited partners are not liable for the obligations of the partnership unless they actively participated in the partnership's business, and there is no evidence defendants actively participated in the business of Suncreek-268. Their role, they argue, was that of a passive investor. Plaintiffs counter that the extent of defendants' liability for the acts of Suncreek-268 is immaterial for purposes of a motion to quash, where the only issue is whether there is jurisdiction over the party, not whether there is a viable claim.

Plaintiffs are correct as far as it goes. (See *Inselberg v. Inselberg* (1976) 56 Cal.App.3d 484, 489 [128 Cal.Rptr. 578].) The question before us is not whether plaintiffs can ultimately prevail on their claims, but whether they can have those claims adjudicated in this state. On the other hand, the same evidence that may establish defendants' control over the activities of Suncreek-268, and hence its liability for the partnership's actions, may also establish the minimum contacts necessary for personal jurisdiction.

But, in the present matter, there is no evidence defendants actively participated in the operations of Suncreek-268. There is also no evidence defendants had any other contacts with the State of California. Defendants were formed in Delaware and their only offices and employees were located in the State of New York. Apart from their interest in Suncreek-268, defendants owned no property in California and conducted no business in the state. Thus, the question presented is whether defendants' passive investment in Suncreek-268 alone can subject them to personal jurisdiction.

Plaintiffs contend that because a passive investor in a business would be subject to taxation in the state where the business earns income, the investor is also subject to personal jurisdiction in that state. Plaintiffs argue the due process requirements for "taxable jurisdiction" are the same as those for personal jurisdiction. According to plaintiffs, if there are sufficient contacts to support taxable jurisdiction, there are sufficient contacts to support personal jurisdiction, provided the lawsuit arises out of the income-producing activity.

In *Burger King, supra,* 471 U.S. 462 [85 L.Ed.2d 528], the Supreme Court concluded Florida had jurisdiction over a nonresident franchisee in a suit brought by the Florida franchisor for breach of the franchise agreement. The evidence showed the franchise agreement was entered into in Florida and was governed by Florida law and the franchisor maintained regular control over the operations of the franchisee. (*Id.* at pp. 464–468 [85 L.Ed.2d at pp. 535–538].) According to the high court: "Jurisdiction . . . may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." (*Id.* at p. 476 [85 L.Ed.2d at p. 543].)

In *Quill Corp. v. North Dakota* (1992) 504 U.S. 298 [119 L.Ed.2d 91, 112 S.Ct. 1904], North Dakota attempted to require a Delaware corporation with no outlets or sales representatives in the state to collect and pay a use tax on all goods sold for use in the state. The corporation solicited business in the state through catalogs and flyers, advertisements in periodicals, and telephone calls. (*Id.* at p. 302 [119 L.Ed.2d at pp. 99–100].) In concluding federal due process did not preclude the exercise of such taxing authority, the high court relied on the minimum contacts test as articulated in *Burger King.* According to the court: "Comparable reasoning justifies the imposition of the collection duty on a mail-order house that is engaged in continuous and widespread solicitation of business within a State. Such a corporation clearly has 'fair warning that [its] activity may subject [it] to the jurisdiction of a foreign sovereign.' [Citation.] In 'modern commercial life' it matters little that such solicitation is accomplished by a deluge of catalogs rather than a phalanx of drummers: The requirements of due process are met irrespective of a corporation's lack of physical presence in the taxing State." (*Quill,* at p. 308 [119 L.Ed.2d at p. 104].)

Plaintiffs assert that, as a general matter, limited partners are subject to taxation in California on income earned by the partnership in this state. Defendants do not contend otherwise. Rather, defendants argue plaintiffs' "novel theory" of taxable jurisdiction was not raised below and should not be considered on appeal. They cite the general rule that an appellant may not change the theory on which a case was tried. (See *Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316 [88 Cal.Rptr.2d 758].) However, the "novel theory" to which defendants refer is not really a theory at all, but an argument for

applying to the present matter a species of cases that have addressed application of the minimum contacts test.

Of course, the question remains whether tax cases are apposite to the situation presented here. Defendants argue that allowing the exercise of personal jurisdiction over a nonresident solely because the nonresident is subject to taxation in the forum state would mean "a person domiciled in Georgia who makes a passive investment as a limited partner in a car rental agency which rents cars in California would . . . find herself subject to jurisdiction in California with regard to a suit initiated by a motorist who was rear-ended by the renter of the rental car in California." By the same token, recognizing personal jurisdiction based on taxable jurisdiction would mean a nonresident shareholder taxed on dividends received from the operations of a corporation in the forum state would be subject to personal jurisdiction for claims arising from that business in the state.

Plaintiffs acknowledge the foregoing would be the logical result of adopting their taxable jurisdiction argument, but find nothing unfair in it. Plaintiffs assert that if one purposely avails himself of the benefits of a forum state for the purpose of earning income that would be subject to taxation, then the person has purposely availed himself of the benefits of the forum state for all other purposes. According to plaintiffs: "[O]ne either purposefully avails one's self, or one does not. The same act cannot be purposeful availment for one purpose, but not for another. A purposeful contact is a personal contact." (Italics omitted.) Plaintiffs further argue if "California could tax the hypothetical Georgia investor on her California source income, it follows that a private party could sue the same investor, assuming the lawsuit arose out of or related to the same contact that gave rise to the jurisdiction to tax." (Italics omitted.)

In support of their argument, plaintiffs cite a number of out-of-state cases where the courts permitted taxation of a nonresident limited partner on income earned by the partnership in the forum state. (See, e.g., *Borden Chems. & Plastics, L.P. v. Zehnder* (2000) 312 Ill.App.3d 35 [244 Ill.Dec. 477, 726 N.E.2d 73]; *Department of Revenue v. Sledge* (2000) 241 Ga.App. 833 [528 S.E.2d 260, 262].) However, in none of these cases did the court go on to find a nonresident limited partner was subject to personal jurisdiction in the forum state solely because he was subject to taxation in that state.

■ We are not surprised. Limited partnerships are treated as associations of individuals for income tax purposes but as discrete entities for other purposes. A limited partnership "can generally be described as a type of partnership comprised of one or more general partners who manage the business and who are personally liable for partnership debts, and one or more

limited partners who contribute capital and share in the profits, but who take no part in running the business and incur no liability with respect to partnership obligations beyond their capital contribution." (*Evans v. Galardi* (1976) 16 Cal.3d 300, 305 [128 Cal.Rptr. 25, 546 P.2d 313].) Like a shareholder in a corporation, "[t]he limited partner is, primarily, an investor, who contributes capital and thereby acquires the right to share in the business profits. (See Uniform Limited Partnership Act, Official Comment, § 1.) His contribution must be in the form of cash or other property, may not consist of services ([Corp. Code,] § 15504), and must be specified as to amount in the partnership certificate. (*[Id.,]* § 15502.) His surname may not be used as part of the firm name. (*[Id.,]* § 15505.) He may not actively participate in the conduct of the business. (*[Id.,]* § 15507.) Assuming that he complies with these conditions, he is not liable as a general partner on business debts and obligations, except to the extent of his capital contribution. (*[Id.,]* §§ 15501, 15507.) His death or withdrawal will not dissolve the partnership (*[id.,]* §§ 15519, 15520, 15521), and he is not a proper party to proceedings by or against the firm. (*[Id.,]* § 15526.)" (*Evans v. Galardi, supra,* 16 Cal.3d at pp. 308–309.) "[A] limited partnership is viewed as an entity separate and apart from the limited partners for purposes of suing and being sued." (*Id.* at p. 311.)

In finding no personal jurisdiction, the trial court relied on *Goehring v. Superior Court* (1998) 62 Cal.App.4th 894 [73 Cal.Rptr.2d 105] (*Goehring*). In *Goehring,* Amtel Communications, Inc., a California corporation, sold pay telephone units to California investors under a sale-leaseback program whereby the investors purchased the units and a leased location for each unit, from Amtel and then leased the units back to Amtel. Amtel promised monthly payments equivalent to a 17 to 19 percent rate of return on investment and further promised to repurchase the units after five years. (*Id.* at p. 900.)

When demand for the pay telephones exceeded supply, Amtel approached Texas Coinphone, a Texas general partnership owned by Goehring and Catalena, to obtain additional units. Texas Coinphone sold Amtel 521 units for $1,321,000, for which Amtel paid $271,000 in cash and executed six promissory notes for the remainder. (*Goehring, supra,* 62 Cal.App.4th at p. 900.) The purchase contracts were negotiated in Texas, the documents were prepared and executed in Texas, payment for the units was made to a bank in Texas, and the pay telephones remained in a Texas location after the purchase. (*Id.* at p. 907.) The only act taken by Texas Coinphone in California was to file a UCC-1 statement to establish a security interest in the pay telephones. (*Ibid.*)

■ The plaintiffs purchased pay telephones from Amtel in California and later filed a class action alleging a fraudulent investment scheme. Included as defendants were Goehring and Catalena, who moved to dismiss for lack of personal jurisdiction. The trial court denied the motion, but the Court of Appeal granted writ relief. (*Goehring, supra,* 62 Cal.App.4th at p. 899.) The appellate court first noted that jurisdiction over a partnership does not necessarily confer jurisdiction over the partners. Jurisdiction over the partners must be based on their own acts in the forum state, including those performed on behalf of the partnership. (*Id.* at pp. 904–906.)

The trial court had found personal jurisdiction by virtue of the sales agreement between Texas Coinphone and Amtel and related documents used to establish a security interest in the pay telephones sold to Amtel, including the UCC-1 financing statement filed in California. (*Goehring, supra,* 62 Cal.App.4th at pp. 906–907.) The Court of Appeal concluded this was not enough, inasmuch as everything but the filing of the UCC-1 statement occurred in Texas. (*Id.* at p. 907.) As to the UCC-1 statement, the court found this single act was insufficient to establish minimum contacts and, in any event, the plaintiff failed to establish a nexus between the filing of the UCC-1 statement and the underlying claims. (*Id.* at pp. 908–909.) The court also found no evidence to support the plaintiffs' argument that the partners entered into the sales transaction for the purpose of causing an effect in California. (*Id.* at p. 909.)

*Goehring* supports defendants' argument that jurisdiction over a partnership, even a general partnership, does not alone confer jurisdiction over the partners. However, beyond that, *Goehring* provides little assistance in resolving the issues presented here. In *Goehring*, the profit-making actions of the partnership occurred in Texas, not California. Neither the partnership nor the individual partners set out to do business in California. They were solicited by a California resident to sell commodities which were to remain in Texas. All contacts with the California purchaser occurred in Texas and concerned a single sales transaction.

In the present matter, the profit-making business of Suncreek-268 occurred in California. And defendants did not just make a single sale of a commodity to a California resident but entered into a long-term investment in a business which they knew operated exclusively in this state. *Goehring* is clearly distinguishable from the present matter.

■ The parties cite no other California cases arguably on point. They do, however, rely on various federal and sister-state cases. Plaintiffs argue these cases support their position that investment by a limited partner in a business operating in the forum state is sufficient for personal jurisdiction over the

partner. Defendants argue the cases support just the opposite position. However, as we shall explain, the cases relied on by the parties, as well as others we have located on our own, support a third position: Investment-related activities by a limited partner in the forum state support personal jurisdiction if the underlying claims arise from those activities, but not if the claims arise from the normal operations of the partnership in the forum state.

In *Sher v. Johnson* (9th Cir. 1990) 911 F.2d 1357 (*Sher*), Sher, a California resident, brought a legal malpractice action against a Florida law firm and its partners stemming from the firm's representation of him in a Florida criminal matter. The plaintiff had been arrested in California and retained Nolan, a California attorney. Sher and Nolan thereafter flew to Florida, interviewed various attorneys, and settled on the defendants, Johnson, Paniello & Hayes. Johnson became the lead counsel, with Hayes assisting. Sher gave Johnson a retainer check for $50,000, and Johnson sent a letter to Sher in California detailing the retainer agreement. Sher signed the letter and mailed it back to Johnson. The partnership sent bills to Sher in California, and Sher sent payment checks to the partnership, drawn on a California bank. To secure the payments, the Shers executed a deed of trust and promissory note in favor of the partnership encumbering their California residence. However, Nolan held the deed, and it was never recorded. Johnson travelled to California to meet with the Shers or Nolan on three occasions. Johnson and Hayes made several phone calls to the Shers in California and sent them various communications by mail. (*Id.* at p. 1360.)

The federal district court dismissed the malpractice action for lack of personal jurisdiction. (*Sher*, *supra*, 911 F.2d at p. 1360.) The Ninth Circuit reversed as to the partnership, but not the individual partners. The appellate court first noted the partnership had not purposely sought to do business in California. It had been Sher who came to Florida and selected them, and the partnership had not marketed its services in California. (*Id.* at p. 1362.) However, by requiring Sher to execute a deed to California real estate, the partnership was looking to California law to secure its right to payment under its contract with Sher. The court found this to be a significant contact which, along with the calls and letters directed at California and the three trips to California by Johnson, subjected the partnership to California jurisdiction. (*Id.* at pp. 1363–1364.)

However, as to the individual partners, the court indicated jurisdiction may be exercised only over those who themselves satisfy the minimum contacts test. And while Johnson and Hayes had several contacts with the state, they were not personally beneficiaries of the deed of trust. The court found the other contacts, standing alone, insufficient to satisfy the minimum contacts test. (*Sher*, *supra*, 911 F.2d at p. 1366.)

In *Sher*, the court found personal jurisdiction over the partnership but not the individual partners, even though there had been some contact between two of the partners and the forum state. And *Sher* involved a general partnership, not a limited partnership.

Plaintiffs contend *Sher* is distinguishable from the present matter by virtue of the fact the partners derived no income from within California, inasmuch as their representation of Sher took place in Florida. However, to the extent the partners traveled to California and met with the Shers or corresponded with the Shers in California, it cannot be said they derived no income from within the state. Thus, *Sher* supports defendants' argument that jurisdiction over Suncreek-268 does not, without more, confer jurisdiction over its limited partners.

In *Marriott PLP Corp. v. Tuschman* (D.Md. 1995) 904 F.Supp. 461 (*Marriott PLP*), CHLP was a Delaware limited partnership with its principal place of business in Maryland. CHLP was formed to own and operate nine hotels in states other than Maryland. Marriott PLP Corporation, a Delaware corporation with its principal place of business in Maryland, was CHLP's general partner. Tuschman was a limited partner of CHLP who resided in Texas. Tuschman had never resided or been employed in Maryland, had no bank account or real property in the state, and signed the limited partnership agreement outside Maryland. However, Tuschman made payments to CHLP in Maryland and, if he had received any income from the venture, such distributions would have originated from Maryland. (*Id.* at pp. 463–464.)

Tuschman later attempted to organize a lawsuit against Marriott PLP among the other limited partners claiming fraud and breach of contractual and fiduciary duties in connection with CHLP. He conducted a number of meetings around the company, including one in Maryland. Marriott PLP brought a declaratory relief action against the limited partners to resolve the disputes over its participation in CHLP. (*Marriott PLP*, *supra*, 904 F.Supp. at p. 464.)

Tuschman moved to dismiss for lack of personal jurisdiction. The district court granted the motion. (*Marriott PLP*, *supra*, 904 F.Supp. at p. 463.) First, the court indicated being a limited partner in a partnership subject to jurisdiction, like being a shareholder in a corporation subject to jurisdiction, does not alone confer jurisdiction on the partner. (*Id.* at p. 466.) The court then went on to find Tuschman's contacts with Maryland, i.e., the payment of money and the potential receipt of income, insufficient to confer jurisdiction. (*Id.* at p. 467.) Regarding Tuschman's visit to Maryland to generate support for a lawsuit against Marriott PLP, the court indicated this was immaterial because it came after the claims arose. (*Ibid.*)

Plaintiffs argue *Marriott PLP* too is distinguishable, because the claim asserted in the lawsuit did not arise from income-producing activities in Maryland, inasmuch as Tuschman received no such income. However, the question is not whether the claim arose from the production of income but whether it arose from income-producing activities, regardless of whether any income was actually produced. Like *Sher*, *Marriott PLP* supports defendants' position that jurisdiction over a partnership does not alone support jurisdiction over the limited partners. A plaintiff seeking to exercise jurisdiction over a nonresident limited partner must establish minimum contacts of the partner himself.

Plaintiffs cite three cases which, they argue, support the exercise of personal jurisdiction over defendants in this matter. In *Morgan Guaranty Trust Co. v. Blacksburg Associates, L.P.* (E.D.Pa. 1990) 1990 U.S.Dist. Lexis 17048 (*Morgan Guaranty*), California residents, the Millers, invested as limited partners in Blacksburg Associates, L.P., a partnership organized under the laws of Delaware with its principal place of business in Pennsylvania. The purpose of the partnership was to develop certain real property in Virginia. The Millers executed a promissory note payable to the partnership in the amount of $3,880,000 which contemplated payment in Pennsylvania. The partnership negotiated the Millers' note to Morgan Guaranty Trust as security for a loan from Morgan to the partnership for which the partnership gave its own promissory note. Both notes eventually went into default. (*Id.* at pp. *1–*3.)

Morgan brought an action against the partnership and the Millers in federal district court in Pennsylvania to enforce the notes, and the Millers moved to dismiss. The court denied the motion, explaining: "[B]y investing in a Pennsylvania-based partnership, the Millers purposefully availed themselves of the privilege of conducting activities within this forum. Although the Millers did not personally conduct any partnership activities in Pennsylvania, as limited partners they nevertheless certainly expected to profit from the activities of the limited partnership in Pennsylvania. It is the activities of the partnership in Pennsylvania *on behalf of the Millers* that satisfies the minimum contacts test." (*Morgan Guaranty, supra,* 1990 U.S.Dist. Lexis 17048 at pp. *6–*7.)

In *Intercontinental Leasing, Inc. v. Anderson* (10th Cir. 1969) 410 F.2d 303 (*Intercontinental Leasing*), a partnership formed under the laws of Minnesota acquired working interests in five Kansas oil and gas leases and rented equipment from Intercontinental, a Kansas corporation, for use in the operation of the business. The partnership agreement designated Petro-Cap, Inc., as the managing partner with exclusive management and control of the business. All other partners were residents of states other than Kansas. Intercontinental later brought suit against the partners for breach of the rental agreement. (*Id.* at p. 304.)

The Tenth Circuit Court of Appeals found jurisdiction in Kansas over the nonresident partners. The court concluded that by acquiring the leases and renting equipment in Kansas, the partnership subjected itself to personal jurisdiction. As for the individual partners, the court indicated: "Through the instrumentality of the partnership, the individual partners purposefully availed themselves of the privilege of conducting business activities in Kansas and invoked the benefits and protections of its laws to satisfy their personal economic desires. This is enough to invoke the long-arm statute and to subject them to personal jurisdiction." (*Intercontinental Leasing, supra,* 410 F.2d at p. 305.)

Finally, in *Schwegmann Bank & Trust Co. v. Simmons* (5th Cir. 1989) 880 F.2d 838 (*Schwegmann*), a Texas resident entered into a limited partnership for the purpose of investing in and developing real property located in Texas. However, the general partner of the partnership had its principal office in Louisiana, the limited partner delivered his subscription agreement to the general partner in Louisiana, the promissory note executed by the partner for the subscription indicated it was governed by Louisiana law, and all loan payments were made in Louisiana. In addition, the partner could have foreseen his note would be used as collateral for a partnership loan in Louisiana. Based on the foregoing, the circuit court concluded personal jurisdiction existed in Louisiana. (*Id.* at pp. 839–840.)

*Morgan Guaranty, Intercontinental Leasing* and *Schwegmann* all appear to support plaintiffs' position that passive investment in a limited partnership operating in the forum state, with the expectation of earning profits from such operations, is sufficient to confer personal jurisdiction over the limited partners. However, as we shall explain, the cases cannot be read so broadly.

Defendants contend *Intercontinental Leasing* is inapposite, because the decision of the court there was based on agency principles that do not apply here. The court referred to a provision of the Uniform Partnership Act (Pub.L. No. 87-709, Sept. 27, 1962, 76 Stat. 636) specifying that every partner is an agent of the partnership and noted the absence of any provision in the articles of partnership restricting the power of the managing partner to bind the partnership. (*Intercontinental Leasing, supra,* 410 F.2d at p. 304.) The state's long-arm statute provided for personal jurisdiction where a party, "through an agent or an instrumentality," conducted business in the state. (*Id.* at p. 305.) The court indicated the actions of the managing partner in Kansas subjected the partnership to jurisdiction in that state. By the same token, the actions of the partnership, through the general partner, subjected the other partners to personal jurisdiction. (*Ibid.*)

We agree with defendants that *Intercontinental Leasing* is inapposite. Unlike Suncreek-268, the partnership in *Intercontinental Leasing* was not a limited partnership and the nonresident partners were not, strictly speaking, limited partners. The partnership was formed under the Uniform Partnership Act, not the Uniform Limited Partnership Act (Pub.L. No. 87-716, Sept. 28, 1962, 76 Stat. 655), and a prospectus filed for the partnership indicated the "investing" partners would be jointly and severally liable for the partnership's obligations. (*Intercontinental Leasing, supra,* 410 F.2d at p. 304.) Unlike limited partnerships, the partnership agreement provided that every partner was an agent of the partnership. (*Id.* at p. 305.) Thus, *Intercontinental Leasing* has no bearing on a case like the present matter, which involves a limited partnership.

Defendants contend the other two cases, *Morgan Guaranty* and *Schwegmann,* are inapposite because, in each, the court concluded personal jurisdiction existed in the state where the partnership conducted business, not where the partnership's property was located. Therefore, defendants argue, those cases support jurisdiction in Oregon, where Suncreek-268 conducted business, rather than California, where the partnership's property was located. However, this argument is based on a false premise that Suncreek-268 conducted business in Oregon rather than California. According to the amended partnership agreement, the principal place of business of Suncreek-268 was the location of the apartment complex, which was California.

Nevertheless, we agree *Morgan Guaranty* and *Schwegmann* are inapposite for a more fundamental reason. As noted earlier, unlike general jurisdiction, which is based on extensive contacts in the forum state and confers jurisdiction over any and all claims asserted against the nonresident, special jurisdiction requires a lesser degree of contacts, but further requires that the claims asserted against the nonresident arise from those contacts. (*Vons, supra,* 14 Cal.4th at p. 446.) In *Morgan Guaranty,* the Millers executed a promissory note payable to the partnership in the forum state as payment for their partnership interest, the note was thereafter negotiated to Morgan as security for its loan to the partnership, the Millers defaulted on their note, and Morgan's claim against the Millers was based on such default. Hence, the claim asserted against the limited partners arose from the creation of their partnership interest, which comprised the contacts of the limited partners in the forum state. The claim did not arise from the business operations of the partnership in the forum state.

The same applies to *Schwegmann.* The claims asserted in that case were based on nonpayment of a promissory note provided by the limited partner in payment for his partnership interest. Again, the claim did not arise from the business operations of the partnership but from the limited partner's contacts in the forum state to establish his partnership interest.

Other out-of-state cases are in accord. In *Rogers v. Texwest, LLC* (Tex.App. 2008) 261 S.W.3d 818, a husband and wife created a limited partnership, Red Boots Investments, as part of a California marital dissolution. Red Boots was created to receive, manage and ultimately sell the marital assets awarded to the parties in the dissolution. The principal place of business of Red Boots was in Texas, where the husband resided. Under the partnership agreement, the rights and duties of the parties were governed by California law, and the wife was to receive distributions from the net income of Red Boots. (*Id.* at p. 820.)

The wife later placed telephone calls and sent e-mails to the husband in Texas asking about investment matters and raising questions about the partnership agreement. After the wife threatened to file suit, the husband brought a declaratory relief action in Texas to obtain an interpretation of several provisions of the partnership agreement. (*Rogers v. Texwest, LLC, supra,* 261 S.W.3d at p. 820.) The wife made a special appearance challenging personal jurisdiction, but the trial court concluded she was subject to jurisdiction. (*Id.* at p. 822.)

On appeal, the wife argued mere ownership of a limited partnership interest in the forum state, with no power to control the operations of the business, is insufficient for jurisdiction. The appellate court disagreed, explaining such argument might carry more weight if the underlying action involved claims arising from the operations of the partnership. But the action instead involved claims over interpretation of a partnership agreement entered into in Texas, and the wife had participated in negotiations over the terms of that agreement. In other words, the claims arose from the wife's activities in the forum state. (*Rogers v. Texwest, L.L.C., supra,* 261 S.W.3d at p. 822.)

In *Sender v. Powell* (Colo.Ct.App. 1995) 902 P.2d 947, a California limited partner of a Colorado partnership was sued to recover withdrawals from the partnership in excess of his contributions under an alleged Ponzi scheme. (*Id.* at p. 949.) The Colorado Court of Appeals concluded the partner's contacts with the state were insufficient to support the exercise of personal jurisdiction over him. The partner had purchased his interest in the partnership in California, all the documents were signed in California, all meetings regarding the partnership occurred in California, the partner did not travel to Colorado in connection with his investment, and he did not conduct any other business within the state. (*Id.* at pp. 951–952.) The only contacts the partner had with Colorado were his receipt of payments that had originated in that

state. Furthermore, the court concluded, the claim asserted by the plaintiff did not arise from any conduct of the partner in the forum state but from the conduct of the partnership itself. (*Id.* at p. 952.) In other words, the claims did not arise from any contacts of the limited partner in the forum state.

In *Fontan Assocs. v. Medpark, Inc.* (Fla.Dist.Ct.App. 1995) 650 So.2d 207, nonresidents entered into a limited partnership with Florida residents for the purpose of operating real property in Puerto Rico. The partnership agreement was filed with the Florida Secretary of State and recited that it was governed by Florida law. The principal place of business of the partnership was in Florida. The resident partners later filed an action to dissolve the partnership and joined the nonresidents as defendants. The nonresidents moved to dismiss for lack of personal jurisdiction, and the trial court denied the motion. (*Id.* at pp. 207–208.)

The district court of appeal affirmed. First, the court concluded the nonresident defendants had "purposefully negotiat[ed] for and thereafter establish[ed] the limited partnership in Florida, specifying that the partnership would be governed by the laws of Florida," and engaged in a 10-year course of dealings with the resident partners. (*Fontan Assocs. v. Medpark, Inc., supra,* 650 So.2d at pp. 208–209.) As such, the nonresidents "created 'continuing obligations' between themselves and the State of Florida and deliberately and voluntarily availed themselves of the privileges and benefits of conducting business here." (*Id.* at p. 209.)

Next, the court concluded the claims asserted in the action arose from the nonresidents' contacts with Florida. According to the court: "When appellants chose to avail themselves of the privilege of forming the limited partnership in Florida, they bound themselves to a statutory body of regulations which control the formation, operation, governance and dissolution of a limited partnership in this state. . . . That appellants are being haled into a court in Florida is not as a result of 'random', 'fortuitous' or 'attenuated' contacts. They are being haled into a Florida court because judicial dissolution of a Florida limited partnership by a Florida court constitutes part and parcel of the privilege to which they availed themselves." (*Fontan Assocs. v. Medpark, Inc., supra,* 650 So.2d at p. 209.)

■ The foregoing cases apply the basic principle of due process that specific jurisdiction over a nonresident defendant requires both minimum contacts and the assertion of a claim that arose from those contacts. Thus, even if we accept plaintiffs' theory that the investment-related activities of a limited partner can amount to the requisite minimum contacts, plaintiffs must still show the claims asserted in the action arose from those activities.

In the present matter, the only contact between defendants and the State of California was their investment in Suncreek-268. There is no evidence defendants participated in either the business of Suncreek-268 or the operation of the apartment complex. The claims asserted in this action arose from Suncreek-268's operations, i.e., its management of the apartment complex, not from defendants' investment-related activities. Hence, those claims did not arise from defendants' contacts with the state.

Plaintiffs contend it is not necessary that the claims arose directly from the forum contacts, as long as there is a substantial connection. They cite *Vons, supra,* 14 Cal.4th 434, where the court said: "A claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction. Rather, as long as the claim bears a substantial connection to the nonresident's forum contacts, the exercise of specific jurisdiction is appropriate. The due process clause is concerned with protecting nonresident defendants from being brought unfairly into court in the forum, on the basis of random contacts. That constitutional provision, however, does not provide defendants with a shield against jurisdiction when the defendant purposefully has availed himself or herself of benefits in the forum." (*Vons, supra,* 14 Cal.4th at p. 452.) In *Vons,* the court found personal jurisdiction over nonresident franchisees by virtue of their ongoing relationship with a resident franchisor. The court concluded the tort claims asserted in the action, which stemmed from tainted meat, were sufficiently related to the franchise relationship to justify the exercise of jurisdiction. (*Vons, supra,* 14 Cal.4th at p. 440.)

But in the present matter, there is no evidence defendants participated in any way in the operations of Suncreek-268. And because the claims asserted in this action stem from those operations, there can be no substantial connection between defendants' contacts with the state, i.e., their passive investment, and the claims asserted.

Finally, plaintiffs contend the fact Suncreek-268 has dissolved and distributed its assets without setting aside a reserve for future claims should be important factors to consider in any jurisdictional analysis. We disagree. The question here is whether the courts of this state have jurisdiction over the limited partners of Suncreek-268. The actions of Suncreek-268 alone in dissolving and distributing its assets have no bearing on that issue except insofar as the claims asserted against defendants arose from those actions. However, they do not.

## DISPOSITION

The judgment (order quashing service and dismissing the complaint against defendants) is affirmed. Defendants are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Scotland, P. J., and Cantil-Sakauye, J., concurred.